### PERLMUTTER v. FLORIDA MEDICAL CENTER, et al.
No. 78-9747.
Circuit Court, Broward County.
July 11, 1978.

David A. Hoines, Fort Lauderdale, for the plaintiff.

Daniels & Butman, Fort Lauderdale, for the defendant Florida Medical Center.

Krupnick & Campbell, Fort Lauderdale, for the defendant Nelson Liss, M. D.

John F. Spellacy, Fort Lauderdale, for the defendant Marshall J. Brumer, M. D.

Richard J. Registro, Assistant State Attorney, for the defendant Michael Satz, State Attorney for Broward County.

JOHN G. FERRIS, Circuit Judge.

*Final judgment:* This matter is before the court on plaintiff's motion for summary judgment on his allegations in Count I, II & IV of the amended complaint (Count III having been voluntarily dismissed), the answers of all defendants, the affidavits of Eileen Perlmutter, Jerome Perlmutter, Nelson Liss, M. D., Susan H. Klaman, the proceedings at Florida Medical Center on June 30, 1978 and the order of this court dated July 5, 1978.

Briefly, plaintiff is a 73 year old man, found by this court to be competent and mentally aware of the nature and consequences of his petitions in his complaint, who is suffering from amyotrophic lateral sclerosis, a disease without known cure and his life is presently sustained only by way of a mechanical respirator attached to a breathing hole in his trachea. Even with such extraordinary means to sustain a miserable wretched life, the prognosis is death

within a short period of time. Removing the respirator would probably result in death within an hour. Plaintiff requires private room facilities at defendant hospital, skilled technician-nurses in attendance at all times and constant attention from defendant doctors and others on the staff of defendant hospital.

Plaintiff has physically attempted on several occasions to remove the respirator attachment and was frustrated by intervention from medical and hospital personnel.

The complaint, although couched in legal terms and issues, simply asks that he be allowed to determine whether his life should be continued by the extraordinary, expensive and painful mechanical means used now or whether he has the right to decide that his life should be terminated by natural means. The plaintiff says he should be able, constitutionally, to make that decision and the defendants generally deny the claim. The state, through its state attorney, further warns of possible criminal violation of Section 782.08, F.S.A., if anyone assists plaintiff in his stated purpose.

Obviously, the issues thus joined are a mixture of the areas traditionally reserved to the professional disciplines of medicine, theology and law. The homogenizing of these disciplines was well described in the landmark case of *In the Matter of Karen Quinlan*, New Jersey, 355 A. 2nd 647, (1976) at page 659 —

> Medicine with its combination of advanced technology and professional ethics is both able and inclined to prolong biological life. Law with its felt obligation to protect the life and freedom of the individual seeks to assure each person's right to live out his human life until its natural and inevitable conclusion. Theology with its acknowledgment of man's dissatisfaction with biological life as the ultimate source of joy * * * defends the sacredness of human life and defends it from all direct attacks.

> These disciplines do not conflict with one another, but are necessarily conjoined in the application of their principles in a particular instance such as that of Karen Ann Quinlan. Each must in some way acknowledge the other without denying its own competence. The civil law is not expected to assert a belief in eternal life; nor, on the other hand, is it expected to ignore the right of the individual to profess it, and to form and pursue his conscience in accord with that belief. Medical science is not authorized to directly cause natural death; nor, however, is it expected to prevent it when it is inevitable and all hope of a return to an even partial exercise of human life is irreparably lost. Religion is not expected to define biological death; nor, on its part, is it expected to relinquish its responsibility to assist man in the formation and pursuit of a correct conscience as to the acceptance of natural death when science has confirmed its inevitability beyond any hope other than that of preserving biological life in a merely vegetative state.

We now proceed to discuss the legal merits and not the medical or theological merits.

The New Jersey Supreme Court, in its well-reasoned opinion, bottomed in part its approval of plaintiff's similar but not identical position in that case on the constitutional right of privacy. At page 663 the court said —

> "The U. S. Supreme Court in *Griswold* found the unwritten constitutional right of privacy to exist in the penumbra of specific guarantees of the Bill of Rights 'formed by emanations from those guarantees that help give them life and substance.' 381 U. S. at 484, 85 S.Ct. at 1681, 14 L.Ed.2d at 514. Presumably this right is broad enough to encompass a patient's decision to decline medical treatment under certain circumstances, in much the same way as it is broad enough to encompass a woman's decision to terminate pregnancy under certain conditions. Roe vs. Wade, 410 U. S. 113, 153, 93 S.Ct. 705, 727, 35 L.Ed. 2d 147, 177 (1973)."

The facts in this case are even stronger because plaintiff himself is able to make that "independent choice" and has in fact made that awful choice realizing the ultimate consequences. Neither the medical profession nor the courts, in the exercise of their *parens patriae* responsibility, should substitute their judgment for his, even though such attempted substitution is undoubtedly well motivated.

The court finds as a matter of fact and as a matter of law that no state or medical interest is sufficient to upset Mr. Perlmutter's decision to decline any further life-prolonging treatment by extraordinary means and that his right to privacy and his self determination as to the course of his remaining natural life is entitled to enforcement by this court. *See Superintendent of Belchertown vs. Saikewicz,* Mass., 370 N.E. 2nd 417.

Having concluded that plaintiff's right to privacy will permit the termination of extraordinary measures to merely prolong a hopeless condition, it follows that plaintiff with his designees, may leave the defendant hospital whenever he deems it expedient and that his desires should not be frustrated by the hospital, its staff, defendant doctors or the state attorney of the 17th judicial circuit. It follows naturally that none of the above defendants should be subjected to any civil liability for a failure to provide additional care and treatment.

One last issue raised by the state attorney remains. The state attorney claims that any termination of extraordinary life-prolonging treatment would be self-murder and that anyone assisting such termination would be guilty of violating Section 782.08 of F.S.A. which provides —

194

> "Every person deliberately assisting another in the commission of self-murder shall be guilty of manslaughter, a felony of the second degree . . ."

The fallacy of the state's position is that the termination of such extraordinary treatment is not homicide (and therefore not "self-murder") but is the result of the free exercise of the constitutional right of privacy. It naturally follows that the death that ensues is expiration from natural causes and not an unlawful homicide. It also follows therefore that anyone assisting plaintiff in the exercise of his right to privacy cannot be guilty of violating the above statute. *In the Matter of Quinlan,* supra, page 669.

In view of all of the above, it is ordered and adjudged that Abe Perlmutter, in the exercise of his right of privacy, may remain in defendant hospital or leave said hospital, free of the mechanical respirator now attached to his body and all defendants and their staffs are restrained from interfering with plaintiff's decision.

It is further ordered and adjudged that any designee of plaintiff may assist plaintiff in implementing his decision on the termination of treatment with the mechanical resiprator and no civil liability should attach to any such designee or to any defendant in the carrying out of the provisions of this judgment.

It is further ordered and adjudged that the state attorney of the 17th judicial circuit shall comply with the provisions of this judgment with respect to any possible criminal prosecutions.

In view of the gravity of the subject matter of this case, all provisions of this judgment are stayed for 10 days from the date of this judgment and for such further period as may be extended by an appellate court of competent jurisdiction, in the event an appeal is filed by any of the parties hereto.